```
            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEBRASKA

TRACEY A. COLEMAN,              )
                                )
          Plaintiff,            )         4:06CV3047
                                )
     v.                         )
                                )
UNITED STATES DEPARTMENT OF     )         MEMORANDUM AND ORDER
HOMELAND SECURITY, Michael      )
Chertoff, Secretary, In his     )
official capacity,              )
                                )
          Defendant.            )
                                )
```

INTRODUCTION

Pending before me is the defendant's motion in limine to strike or clarify issues for trial, filing 68. The defendant's motion raises dispositive issues and requests evidentiary trial rulings.

The plaintiff filed a 38-page complaint on March 3, 2006, (filing 1), alleging what she now describes as "simple and straightforward" employment claims. Filing 73 (Responsive brief), p. 3. As described by the plaintiff, her five claims include:

> (1)  unlawful retaliation in violation of Title VII;
>
> (2)  unlawful retaliation in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. Sections 621 to 634 (the "ADEA");
>
> (3)  unlawful hostile work environment based on sex in violation of Title VII;
>
> (4)  unlawful sex discrimination; and
>
> (5)  unlawful age discrimination.

Filing 73 (Responsive brief), pp. 3-4.  She alleges she was disparately treated and not promoted due to her age and gender. Filing 73 (Responsive brief), p. 4.

The case was initially set for trial on March 26, 2007, with a pretrial conference scheduled before the undersigned on February 23, 2007.  The trial was later continued to April 16, 2007, and the pretrial conference was continued to March 27, 2007.  Filing 27.  To facilitate the parties' ability to fully raise dispositive motions before the court, the pretrial conference was continued to June 12, 2007, and trial was set for July 9, 2007.  Filing 45.

The defendant timely filed a motion to dismiss or for summary judgment on January 30, 2007.  Filing 38.  The defendant argued that based on the uncontroverted evidence and the allegations of plaintiff's complaint (assumed to be true for the purposes of that motion only), "Ms. Coleman has not been subjected to discrimination by the agency, that she has not been subjected to a hostile work environment, and that she has not been retaliated against as a result of her filing various complaints of employment discrimination;" (filing 39 (Defendant's Brief), p. 2); and she failed to exhaust her administrative remedies with respect to any promotions she sought and failed to receive in January of 2005, (filing 39 (Defendant's Brief), p. 39).

The plaintiff responded that "Defendant's conduct, evaluated in its totality and cumulative nature, constitutes an intentional, systematic, pattern of unlawful adverse actions." Filing 46 (Plaintiff's Responsive brief), p. 2.  Thirteen pages

of the plaintiff's 78-page summary judgment brief were dedicated to dissecting the plaintiff's complaint and the defendant's answer.  The plaintiff argued that since the defendant's answer denied certain material allegations of the plaintiff's complaint, those allegations are "in dispute" for the purposes of ruling on defendant's motion for summary judgment.  Filing 46 (Plaintiff's Responsive brief), pp. 3-16.  On June 6, 2007 the court filed a memorandum and order denying the defendant's motion for summary judgment.  Filing 60.

The parties appeared at the pretrial conference scheduled before the undersigned on June 12, 2007.  At the conference I concluded the parties were not adequately prepared.

> At the conference . . . the court concluded that the case was not ready for trial, and discussed with counsel the additional steps necessary to clarify issues, including to what extent the matter should be tried to a jury.  Counsel discussed the possibility of filing motions to strike various matters. . . .

Filing 64.

It was apparent during the conference that there were fundamental and strongly held differences in how the parties interpreted the law at issue and its application to the undisputed facts.  The parties were "ships passing in the night," and despite the parties' efforts, that situation had reached a stalemate.  This stalemate, in turn, hindered or eliminated the parties' ability to properly identify the factual and legal issues for entry of a pretrial conference order and for trial of this case.  Therefore, the undersigned granted the defendant leave to file a motion "to strike or otherwise clarify issues." Filing 64, ¶ 1.  The parties were advised at the pretrial

conference that the evidence submitted on summary judgment would be reviewed on such a motion and need not be re-filed in support of any motion for clarification filed. The defendant's "Motion to the United States Magistrate Judge in Limine to Strike or Otherwise Clarify Issues," (filing 68), is now pending before me.

The record before the court on defendant's motion consists of the plaintiff's complaint,[1] the defendant's answer, the parties' submissions in support of or in opposition to the motion for summary judgment, (see filings 40-42, 47, & 55), and the evidence submitted on the motion for clarification. See filings 69 and 74. The following summarizes that evidence.

The plaintiff is a female who, at the time of the alleged incidents, was forty-eight and forty-nine years old. Filing 1, ¶¶ 1, 8, 25; filing 47, ex. A (Coleman declaration), ¶ 4. The events underlying the plaintiff's complaint began on June 1, 2004.

Plaintiff served as an Army officer for six years, and was honorably discharged in 1983 as a captain. Filing 47, ex. A

---

[1] The record is voluminous. However, there are many duplicate filings and redundant allegations. Specifically, many of the allegations within the complaint are repeatedly stated within that document and, in opposition to the defendant's motion for summary judgment, the plaintiff filed an 18-page declaration that, in large part, repeats the allegations of the complaint and the plaintiff's deposition testimony. In addition, the plaintiff re-filed excerpts of depositions that had previously been submitted by the defendant in their entirety.

For the purposes of this motion, except to the extent they are directly contradicted by the plaintiff's deposition and affidavit testimony, the allegations of fact within the plaintiff's complaint are assumed to be true. However, the conclusory statements of law and fact within the plaintiff's complaint are not assumed to be true for the purpose of this motion.

4

(Coleman declaration), ¶ 10. Including this military service, she has been employed by the federal government for over twenty-five years.

The plaintiff is currently employed in Lincoln, Nebraska by the Department of Homeland Security, Bureau of Citizenship and Immigration Services, Nebraska Service Center (referred to hereafter as the "Nebraska Service Center" or the "Agency"). Filing 1, ¶¶ 9, 26. Her employment as a Center Adjudications Officer ("CAO") at the Nebraska Service Center began in 1992. Filing 1, ¶ 29; filing 47, ex. A (Coleman declaration), ¶ 11. She was initially hired as an immigration examiner, GS-7, step 9. This job was later renamed as "adjudications officer." As was the normal course for this position, within a year of hire, the plaintiff progressed to a GS-9, and a year thereafter to a GS-11. She remained a GS-11 until the job was upgraded to a GS-12 position. At that time, the plaintiff, along with all other adjudications officers with one year of experience, immediately became a GS-12 employee. Filing 40, (Coleman deposition), p. 19-21.

Plaintiff applied for and was selected by former Agency Director Terry Way to be the Center Adjudications Officer (Ombudsman)(hereinafter "Ombudsman") on December 30, 2000. Filing 1, ¶ 30; filing 40, (Coleman deposition), p. 23; filing 47, ex. A (Coleman declaration), ¶ 8. Like the adjudications officer position, the Ombudsman position was a GS-1801 "officer corps" job. Filing 40, (Coleman deposition), p. 22, 24.

The Ombudsman was tasked with receiving and attempting to resolve the public's complaints concerning the Agency's services. Filing 1, ¶ 33; filing 40 (Christian deposition), p. 10. The

5

Ombudsmen position was unique--only five states had such a position. Filing 40, (Coleman deposition), p. 49. The plaintiff was the only Ombudsman in Nebraska. Filing 47, ex. A (Coleman declaration), ¶ 12-13.

In May of 2003 the plaintiff raised allegations of misconduct against CAO Ross Heckman who, at the time of the alleged misconduct, was an Acting Supervisory Center Adjudications Officer ("SCAO"). Heckman had denied an applicant's I-140 petition. When the applicant challenged this decision, the plaintiff apparently reviewed the file. Her claim against Heckman alleges Heckman destroyed plaintiff's notes on the case and used disrespectful and discourteous language in the initial denial opinion. Upon investigation, Assistant Center Director John W. Brown concluded the plaintiff's allegations were totally unfounded. In his May 29, 2003 report to Greg Christian, ("Christian"), who was the Deputy Director of the Nebraska Service Center at that time, Brown stated:

> In closing, I strongly suggest that the ombudsman be counsel[ed] about making frivolous allegations of misconduct and that she be made aware of the Bureau's instructions regarding fraud, waste and abuse. These allegations are totally unfounded and have resulted in the needless use of valuable resources.

Filing 47, ex. H. Heckman's supervisor during the course of this investigation was Lonnie "Mike" Lebow. Filing 47, ex. H.

While Christian was serving as Deputy Director, Lebow spoke with Christian about Lebow's concerns regarding the relationship between the Ombudsman and the adjudicators at the Nebraska Service Center. Lebow believed the plaintiff wielded too much power and was not working or communicating well with the

supervisors and CAOs.  Lebow explained that, to his knowledge, the supervisors and managers were never consulted regarding the Ombudsman's role, the interaction to be expected, the authority she would have, or the protocol she would follow.  "She was permitted to write her own position description, . . . designed her own reports, . . . [and was] given almost full leeway to . . . handle these situations with what, in my opinion, appeared little or no guidance from the director."  Filing 40 (Lebow deposition), p. 27.  While serving as Deputy Director, Christian told the plaintiff he was offended by certain aspects of the Ombudsman's position.  He also told her on at least one occasion that no one liked her.  Filing 1, ¶ 38; filing 47, ex. A (Coleman declaration), ¶ 25.

On April 23, 2004 Way asked plaintiff to serve as the Acting Supervisor of the Congressional Liaison Unit ("ASCLU").  Filing 1, ¶ 35, 42; filing 40, (Coleman deposition), pp. 34-36; filing 40 (Christian deposition), p. 11; filing 47, ex. A (Coleman declaration), ¶ 26-27.  The detail was expected to last a few weeks or possibly two months, but was not to exceed (NTE) 120 days, that being August 20, 2004.  Filing 40, (Coleman deposition), p. 37, 40-42; filing 42, exs. 44 & 45.  The plaintiff viewed this appointment as an opportunity to gain supervisory experience and accepted the appointment.  Filing 40, (Coleman deposition), p. 37.

The plaintiff's performance ratings from Director Way were exemplary, and she received Quality Step Increases and monetary awards.  She has never been disciplined.  Filing 1, ¶ 31; filing 40 (Coleman deposition), pp. 160-61; filing 47, ex. A (Coleman declaration), ¶¶ 19-23 & exs. B-F.

7

When Way retired, Christian was appointed the Acting Center Director and therefore became plaintiff's supervisor. Christian's supervisor was Jujie Ohata, a woman, and the director of service senter operations. Filing 41, (Palarski deposition), p. 77. Way's retirement marks the beginning of the plaintiff's allegations of sex and age discrimination, and unlawful retaliation for filing EEO complaints. That retirement occurred on or about May 29, 2004.[2] Filing 40 (Coleman deposition), p. 44.

Plaintiff alleges a series of hostile acts occurred after Way retired and Christian became her supervisor. These acts can be loosely identified as: 1) the June 1, 2004 memorandum; 2) the June 2004 premature termination ("truncation") of plaintiff's detail as ASCLU; 3) retaliatory conduct for filing an EEO informal complaint on June 21, 2004; 4) the August 2004 truncation of plaintiff's second detail as ASCLU; 5) the August 25, 2004 meeting; 6) ignoring the plaintiff's supervisory recommendations and the destruction of performance reviews she prepared in September 2004; 7) failing to promote her to an SCAO in October 2004; 8) reclassifying the Ombudsman position under the Special Assistant position description; 9) the November 29, 2004 memorandum; 10) eliminating the Ombudsman position in January 2005; and 11) failing to promote upon plaintiff's several applications in 2005.

The record is very detailed on the various events leading to the plaintiff's claims. It has been reviewed both by the district judge on the previous motion for summary judgment and by

---

[2]May 29, 2004 was a Saturday. The following Monday, May 31, 2004, was Memorial Day, a federal holiday. Therefore, the first working day following Way's retirement was June 1, 2004.

the undersigned on the present motion.  No purpose would be served at this point in recapping all of that detail, because the matter will be decided based on the evidence adduced at trial, in accordance with the ruling on the motion for summary judgment.  My purpose in reviewing it was to attempt to clarify the issues as set out in the proposed final pretrial order submitted at the time of the pretrial conference.  Having now done so, I now have a better understanding of both the plaintiff's claims and the defendant's defenses, and on *sua sponte* reconsideration of the matter in light of that understanding, I now conclude that the proposed statement of issues as originally proposed by counsel should stand.

The overall issue before the court is "whether the employee has provided evidence from which a reasonable factfinder could conclude that the employer intentionally discriminated against the employee for a prohibited reason."  <u>Brandt v. Shop "n Save Warehouse Foods, Inc</u>., 108 F.3d 935, 938 (8th Cir. 1997)(quoting <u>Rothmeier v. Investment Advisers, Inc.</u>, 85 F.3d 1328, 1334 (8th Cir. 1996)).  The attorneys' statements of issues contained in the proposed pretrial order (See filing 66, Exhibit 1) sufficiently set out the major issues to be resolved by the court.

To save counsel additional time and money in preparing this matter for trial, if they will provide a new version of their proposed pretrial order, showing any objections thereon, I shall conduct the remainder of the final pretrial conference by telephone, if possible.  That can be done either as now scheduled on November 9, 2007, or alternatively at some other date and time agreed on by counsel and my judicial assistant.

IT THEREFORE HEREBY IS ORDERED:

1. Defendant's motion to strike or clarify issues, filing 68, is denied.

2. Trial remains set to commence on December 10, 2007 at 9:00 a.m. before the Hon. Richard G. Kopf, United States District Judge in Courtroom #1, United States Courthouse, Lincoln, Nebraska.[3]  Trial is set for a duration of four trial days.  Jury selection shall be at commencement of trial.  Trial briefs and proposed jury instructions and proposed findings of fact shall be submitted to the trial judge on or before December 3, 2007.

DATED October 23, 2007

BY THE COURT:

_s/ David L. Piester_
United States Magistrate Judge

---

[3] Despite inquiries to counsel to the contrary, this case will not be reassigned for trial at the University of Nebraska College of Law.